Next case is number 162285, T3 Limited v. TRE Milano. Mr. Buck. May it please the Court. There are certain guiding principles that should have governed the claim construction in this case. One, that there's a secondary opening, which distinguished over the prior art. Two, that a formed curl slides off the elongate member or free end. And three, that in the process there's no obstruction or force that causes the curl to unwind. And what that all came to was that the point of that was to distinguish over prior art curling devices or curlers, just standard curlers that have been used for decades and decades. And the first issue I'd like to address, which the Board got wrong, frankly, is the whole issue of the definition, the I.E. issue. If you take a look at the element which begins, the length of hair may pass out of the chamber, that phrase was specifically defined in the specification in column 6. And, you know, I do want to point out that those guiding principles that I just mentioned are in the summary of the invention and are themselves definitional. In addition to that, in column 6, right, we have another definition, which is the I.E. phrase. Now, the I.E. phrase, this Court has found in various cases in Edwards, Abbott, Skin Medica, that I.E., the text that follows an I.E. in the specification is definitional. And that's exactly what we have here. And the Board rejected that improperly. So if you take a look at actually what is said after that I.E. in column 6, it says that the length of hair slides along the elongate member, 20, towards and subsequently off its free end. There's really no dispute that the Board does not contend that there would still be anticipation if that claim construction were accepted. And so there is no, so if this Court agrees with us that that's definitional, not just because it follows the I.E., but also because it's consistent with the summary of the invention and that there's nothing inconsistent elsewhere in the patent, then there is no anticipation and the Board has to be reversed. One point I want to make about that is that this Court's law on the meaning of I.E. in the context of the specification really requires the Court to look at context. And so some case law that's been cited against us is not inconsistent with this. So you look at the context and if there's some embodiments that are inconsistent with the text after the I.E., then maybe you can look and decide that the I.E. is not definitional. But that's not the case here. Every embodiment is consistent. There's nothing inconsistent with the text that follows the I.E. in the specification. And so there really is no opposition or there's really no contention by my friend across the aisle here that if the Court adopts that definition that there still is anticipation. And so that would require a reversal. The next issue, unless the Court has any questions, there's three primary issues that at least I intended to cover. Unless the Court has any questions about the I.E. argument, I'll move on to the second. The second argument that I'd like to address is the definition of free end. What the Board did, when I read that definition, it's almost as if the Board was defining the term with respect to the prior art and not the patent itself. And what the Board did is it included in the definition of free end the concept of a different element, which is the abutment, which is a separate element in and of itself. It also introduced the concept of the abutment being structural for the free end. That was also incorrect. A third error made by the Board was that in looking at the definition, they really defined the term with respect to one embodiment, and that is where the abutment is located at the free end. The patent, and indeed the claim itself, permits the abutment to be elsewhere in the device and not just at the free end. But the Board's definition, at least the way I read it, requires it to be at the free end. So it's wrong on that basis. So there's three different errors that the Board made in terms of defining free end. And so the way we defined it, which is consistent with the summary of the invention, the aims of the patent, is that the free end is devoid of any structure that would impede the translational release of the hair, which is consistent with the summary of the invention. And if the Board accepts our definition, that's a second ground for finding no anticipation, because that element would not be contained in either of the anticipatory references. The Board did not maintain that, nor does Trey Milano. So that's a second independent basis for finding no anticipation. Unless there's any questions on that, I'll move on to my third issue. The third issue has to do with the element that has to do with the adjacency between the free end and the secondary opening. And what the Board found was that in the prior art, as the curler in the prior art, and the prior art is about a curler that's actually inserted into a device, as the curler is being removed, that means that the length of hair is able to pass out of the chamber. We argued before the Board that, consistent with the summary of the invention, that the adjacency requirement of the claim requires that the free end and the secondary opening have to be adjacent at all times. As the entire length of hair is removed from the device, that adjacency has to be maintained. Because it just doesn't make sense in the context of this invention, or the aims of the invention, that once you move the curler slightly away from the device, that that satisfies the element of the claim. And so this element is not contained in the prior art patents. And so that's a third independent reason for finding no anticipation. So, unless there's any questions, I don't want to take up more time than I need to. Well, I think what impressed me about the argument in the situation is that the rejections were solely on the ground of anticipation. Yes. Is that right? Yes, that's right. And your argument, which you just presented, was this element by element. And I must say I saw weight to your argument that the same device just didn't exist in the prior art. That's right. That is the overall thrust of your position. Not that whatever may or may not have been a valid ground for objection, as far as anticipation was concerned, the requirements are rigorous. Yes, that's right. That's absolutely correct, Your Honor. And the thing is, I mean, if you look at this patent as a whole, read it, read everything in context, it's very clear that this patent was intended to provide an advantage over the prior art of curlers. It's the fact that prior art curlers, even though it's incorporated into a device, was used to anticipate these claims is really, it really defeats the aim of the invention that's well documented in the patent. So, yes. Okay, thank you. That's you from the office. Mr. Sheldon, I explained what's troubling me about this case. It would have been perhaps a bit more difficult if there had been an argument about obviousness. Doesn't the law of anticipation require that the same device, in this case, is shown with all of the elements in the same order? I understand that, Your Honor. And it's, to quote this court, the name of the game is the claims. The claims are broad, intentionally broad. The specification is intentionally broad. And in this case, the patentee, to try to capture everything possible, the same analogy, claimed a fruit. And now they're complaining that, well, we didn't mean an apple. We only meant oranges. Every limitation of the claim is met. Before I respond to those arguments and respond to your question, there's been two recent developments we'd like the court to take notice of by judicial notice. And the reason they couldn't have been in our brief, because they just recently occurred by what TF3 has done in the patent office, and one of them is completely inconsistent with what they've argued to this court. Whenever it was, when did it occur? One was an amendment. Unless it occurred yesterday, if it's important, you could have presented it to us. We only learned about it this past week in reviewing the file histories of related patents. And we checked with the clerk and said, this is the way to do it. And we provided these documents as soon as we became aware of them to the opposing counsel. So I request the indulgence of the court. One of them involves U.S. publication 2015-02-1727. Part of this related family, Denebictus is the patentee, TF3 is the owner. And the court will notice one of the arguments they've made that the claims should be narrowly construed is you can't consider incorporation by reference of a document that was incorporated by reference, which the board in one instance did incorporate used to incorporate by reference. Contrary to the argument to the court, contrary to the argument to the PTAB, TF3 has actually referred to that document as being incorporated by reference to overcoming prior art rejection in the patent office. So they're talking one way, one side of their mouth to the patent office and prosecution, and another side of their mouth. So the whole argument that we only teach one version is inconsistent with what was incorporated by reference at prior publication. The whole argument to the court is inconsistent with their argument to the patent office. I brought copies of that document if the court would consider it. So, again, we have a completely different position with the patent office. And candidly, we think the board, and the only one place they had clear error was when they refused to consider that with regard to whether you have a version which is currently shown in figure 12 of that incorporated document on the basis that it didn't have a primary and secondary opening. The board got that wrong. Figure 12 is based on figure 11. Figure 11 currently shows a primary, secondary opening. And the only difference between figure 11 and figure 12 is you can detach the elongate member. So that's, I think, important. The other document ties in with the basic broadest reasonable construction argument. And certainly the board has a broad reasonable construction. And the reason for that is coming out of the patent office is a very, very rare case where this court will say the construction was too broad. Two cases of the three that were cited, they both were clearly distinguishable in that the board construction was inconsistent with the claim language itself. That is not the case here. And one of the remedies that TF3, if they thought they should have had a narrower claim, rather than have the public and a small company on the West Coast get dragged to Connecticut for a lawsuit, is to go back to the patent office, reissue, reexamination, or continuation. And that brings me to the second patent, second document. U.S. Patent 9629434, which issued April 25 to TF3, Benebictus, part of the same family. Claim one is substantially identical to claim one here. The only difference is they added the limitation, which is equivalent to what they're asking now, that the elongate member can't be detached. That's basically what they're saying. We want you to read the claim that the elongate member can't be detached. Well, they expressly did that in another patent. So it's unfair to the public, unfair to our brutal client, that TF3 is trying to do what's very unusual, patentee, narrow the claim to catch, you know, save validity. It should not, as a matter of public policy, in the broadest reasonable construction, and what the Supreme Court said in the Cuso case, it should not be allowed to do that. Now let me respond to the argument. Seven cases were cited between the parties on what, i.e., is it definitional or not. Four of them went our way, not definitional. But that's a matter of context, not precedent. Exactly. But in a matter of context, the description of that embodiment was exemplary, that type of language was used throughout. The claim is the same way. The claim doesn't even require the hair to come out. The claim doesn't require even to curl hair. There's a lot of other options that that device can be used for that's in the specification. The entire specification, all the claims, everything is made, can, exemplary. This version, right at the beginning of the description of the drawings, exemplary, that very paragraph, that paragraph in column six, describes it, this embodiment, exemplary, to take one embodiment using broad language in the claims and say, oh, we're going to add this limitation with words that aren't even in the specification. Where does translational appear? It's just not fair to the public, not fair to our client. TF3 can do what it did, do a continuation, could move to amend. Why come up with a narrow definition when, let me go to reasonable construction. Was it unreasonable for the board when you have four out of seven cases that we're aware of, i.e., they went the other way? It's certainly a reasonable construction. And that's the point. Did the board make an unreasonable construction? Now, I want to respond to the argument that even if you accept that construction, there's no anticipation. We have never conceded that. Both experts have said even if you use that definition of free end, there is still meet that. You can still get the hair off the end of that elongate member without taking it out. I refer to Mr. Nosenchuk, Dr. Nosenchuk's testimony. He's the TF3 expert. At page 116, line 24, through page 117, line 7, appendix 1047, where he's asked that, and we're talking about Hoshini, and we asked, why do you consider that a free end after the preliminary questions? Well, it certainly has a lot less obstruction and apparently no supporting device once this is assembled, unlike the other end. So we think that concedes even under the definition. And our expert, Mr. Verdoka, during his deposition at page 65, lines 4 to 7 and 18 to 21, says Ganaga and Hoshini both have a free end. So the suggestion that our client, Trey Milano, has conceded the issue is wrong. So whether you accept, and I think the board's construction is reasonable, basically the board said free end is an unsupported end in the open position. How can you disagree with that? You have a beam. You have one end, the other. The other end has to be supported. And to say nobody has anything to blame other than TF3 by having such, you know, a difference between one end of a beam that's free and the other end of the beam is supported is certainly a reasonable construction. Anybody have any questions? No questions. Thank you, Mr. Sheldon. May I have one more thing? The argument was made a functional language is okay in a claim. Yes, it is. But in the two cases cited by the reply brief by TF3, the Court says you do it at risk, your own risk. Because the prior art, when you claim function, can inherently have that function. And that's exactly the case here. Both Hoshini and Ganaga have that function where hair comes out. And the argument that the hair has to come out while the elongate member is still in position is nowhere in the claims. In fact, the claims don't even require the hair to come out. It's basically prior counsel, I don't think they want it, but the argument of fairness certainly applies here, certainly applies in the Supreme Court's Cuso case. Fairness to the public, draft your claims narrowly, which is exactly what the Supreme Court did, and don't make little companies have to guess, oh, are you going to want a broad interpretation or a narrow interpretation? But you, as I recall, you raised no issue under 112. Is that right? That's not correct. We said to the Board that we find the claim difficult to construe. We'll accept your definition, but we're not waiving our argument under 112, and we can't. In IPR, we do not have that option. Did the Board decide that? The Board decided only on anticipation, though. Is that correct? Our other grounds in our original petition were not accepted. We said it would be obvious anyway, even if it wasn't anticipatory. The Board said we're only going to go on anticipation. It's not like we didn't say it was obvious. The Board limited itself to anticipation. Does it make it obvious? Yes, in my view. The gee whiz is you can get the hair out a second opening. That's exactly what Inaga and Hoshini teach. But the Board just took the easy way out, but limited it to anticipation. Thank you, Mr. Shelby. Thank you. Mr. Bradkin. Thank you, Your Honor. I just have a few points. I think the fact that Trey Milano comes up here and relies on a patent issued in 2017 and an application published in 2015 that are not in a record to make its lead argument, I think that illustrates the weakness of their position. Counsel mentioned that there was an application that was incorporated by reference, and that's true. But if you take a look at Column 2 of the patent, where it describes the present invention, summary of the invention, it actually distinguishes that, and the Board recognized that, while certain aspects of that application were incorporated by reference, it certainly wasn't with respect to the inventive aspect of these claims. And you can see that in Column 2 right at the top of the page, lines 1 through about 9 or so, where this invention was distinguished from that incorporated by reference application. Counsel also talked about how the cases on I.E. for the – I'm sorry, was there – were you – I'm sorry. Okay. Counsel also talked about how the cases on I.E. being definitional, and I quote, this went our way. Judge Lori, I think you mentioned it depends on the context. And, of course, it does depend on the context, right? And so if I.E. is used, and this is the body of case law of this court. If you read all of the cases together, what you have to, I think, include is that I.E. is definitional, unless there's disclosure in the patent, which is directly contrary to it. Here, everything in the patent is consistent with the language after the I.E. being definitional. And one thing I will point out about the Edwards cases, Edwards specifically found that even if that I.E. definitional phrase is used in connection with a specific embodiment, it's still definitional. And the thing I'd like to emphasize is every embodiment in that patent is consistent. And the way the hair flows off of the free end from the elongate member is the same feature in every embodiment. It's the only way hair is described as coming out of the instrument. So it's fully consistent, and I.E. is definitional. Basically what the board did here was that they tried to read a non-Curler patent, a 118 patent, on Curler prior art. And that's just erroneous as a matter of law, and there is no anticipation. Okay. Thank you. Thank you both. The case is taken into submission.